

305 Broadway, Suite 1200
New York, New York 10007
(212) 385-1400
Fax: (212) 385-1401
firm@stephenslawny.com
www.stephenslawny.com

September 6, 2022

<u>Via ECF</u>
Hon. Rachel P. Kovner, USDJ
United States District Court
Eastern District of New York
225 Cadman Plaza
Brooklyn, NY 11201

        Re:    *Juan Solis et al v. Big Apple Designers Inc. et al*, 21-cv-06224

Dear Judge Kovner:

We represent Juan Solis and twenty-seven additional Plaintiffs in this wage and hour matter against Big Apple Designers Inc, Prime Structure Inc., Big Apple Designers NY LLC, Prime Structure NY Inc., Velocity Framers USA Inc., NYC Best Squad Construction Corp, and Gold Edge Contractors Inc. ("Defendants"), arising under, *inter alia*, the overtime provisions of the Fair Labor Standards Act ("FLSA"). As the parties advised the Court on or about May 24, 2022, they have reached a settlement in principle following lengthy negotiations, which they have now reduced to a formal written agreement ("Agreement"), attached hereto as **<u>Exhibit A</u>**. We write now, on behalf of the parties, to explain the terms of the settlement with respect to Plaintiffs' FLSA claims and seek the Court's approval thereof,[1] in accordance with *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), as well as an order dismissing this case with prejudice pursuant to Rule 41(a)(2).

    **I.**    <u>**Procedural History and Settlement Agreements' Terms**</u>

On November 9, 2021, Juan Solis and eleven other individuals initiated this action seeking relief for Defendants' alleged violations of, *inter alia*, the overtime provisions of the FLSA. [Doc 1]. In the Complaint, Plaintiffs alleged that Defendants, New York City construction companies, employed them as laborers at various construction sites throughout the City. Plaintiffs' job duties

---

[1] Plaintiffs also bring claims in this case for Defendants' alleged violations of the New York Labor Law ("NYLL"), which while resolved as part of the parties' Agreements, do not require court approval for dismissal under *Cheeks*. *See, e.g., Gallardo v. PS Chicken Inc.*, 285 F. Supp. 3d 549, 553 (E.D.N.Y. 2018); *Feliz v. Parkoff Operating Corp.*, 2018 WL 1581991, at *3 (S.D.N.Y. Mar. 27, 2018).

purportedly included loading and unloading materials, tools, and equipment; distributing materials from floor to floor at construction sites; transporting materials between construction sites; mixing and pouring concrete; removing debris; painting and spackling; and basic carpentry, including constructing framework and putting up walls. On November 10, 2021, Plaintiffs filed an amended complaint adding a thirteenth plaintiff, Alejandro Molina.

Defendants maintain that they did not employ any of the Plaintiffs, but rather, Plaintiffs are employed exclusively by one or more subcontractors. These subcontractors hire and fire, pay and direct the work of the Plaintiffs, and otherwise exercise sole dominion over the terms and conditions of their employment. However, prior to serving an Answer, on February 20, 2022, the defense moved for a stay of the proceedings on account of a criminal indictment handed down four days earlier by the New York County District Attorney against two of the companies named as Defendants. [Doc 34]. On March 14, 2022, Plaintiffs opposed the motion. [Doc 38]. Pursuant to discussions among counsel, on April 4, 2022, the parties sought a referral to mediation. By May 17, 2022, fifteen more Plaintiffs "opt-ed in"[2] to the lawsuit, bringing the total number to twenty-eight.

On May 23, 2022, the parties attended an all-day mediation with Barry Peek, Esq., and reached an agreement in principle for the total amount of $325,000 ("Settlement Sum"), exclusively in satisfaction of the individual claims of the named Plaintiffs and opt-ins, the twenty-eight total individuals. As such, and with the consent of all answering parties, and the Court's approval, Plaintiffs plan to file a Second Amended Complaint naming all 28 "opt-ins" as named Plaintiffs, and dispensing with the class and collective action allegations, since the $325,000 is for the twenty-eight individuals only, and no collective action or class action certification is sought. A copy of the proposed Second Amended Complaint is annexed hereto as **Exhibit B**.

The Settlement Sum is to be distributed as follows: one-third of the net settlement amount, after deducting expenses, to Plaintiffs' counsel, The Stephens Law Firm, PLLC. The remaining two thirds of the net settlement amount will be distributed to Plaintiffs, each in accordance with his proportionate share, based upon the number of weeks each reported to have worked.

The Settlement Sum will be paid within sixty days of the Court's approval of the settlement as fair and reasonable under *Cheeks*. In the event of non-payment, after notice and an opportunity to cure, Defendants agree that Plaintiffs may apply to the Court, which will retain jurisdiction to enforce the agreement, for the entry of judgment in the amount of any unpaid balance, plus attorneys' fees and costs.

---

[2] The action is brought as a purported collective action and class action, but for reasons that follow, is no longer being brought as such, and as such, a proposed Second Amended Complaint with Tracked Changes is filed herewith.

Regarding Plaintiffs' counsel's fees and costs, counsel seeks approval of the total amount of $108,848.20, representing out-of-pocket litigation expenses of $772.30, and one-third or 33.33% of the *net* Settlement Sum after deducting expenses, amounting to $324,227.70. The remaining $215,379.50 will be distributed among the Plaintiffs in accordance with their proportionate shares.

For the reasons described below, Plaintiffs, on behalf of the parties, respectfully submit that the amounts and allocations, as well as all other terms, are fair and reasonable under the circumstances of this case.

## II. The Agreement is Fair and Reasonable

FLSA claims may only be settled and dismissed under Rule 41 if they are approved by the Court. *Cheeks*, 796 F.3d at 206-07 (with prejudice); see also *Samake v. Thunder Lube, Inc.*, 24 F.4th 804, 810 (2d Cir. 2022) (without prejudice). "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Kochilas v. Nat'l Merch. Servs., Inc.*, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id.* Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id.*

In evaluating the fairness of a proposed settlement of FLSA claims, most courts in this Circuit apply the five-factor test articulated in *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2012), which the Second Circuit has twice recently endorsed. See *Fisher v. SD Protection Inc.*, 948 F.3d 593, 600 (2d Cir. 2020); *Yu v. Hasaki Rest., Inc.*, 944 F.3d 395, 413 (2d Cir. 2019). The *Wolinsky* factors consider: (a) the plaintiff's range of possible recovery; (b) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (c) the seriousness of the litigation risks faced by the parties; (d) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (e) the possibility of fraud or collusion. See *Chen v. Xpres Spa at Terminal 4 JFK, LLC*, 2021 WL 4487835, at *4 (E.D.N.Y. Oct. 1, 2021) (Cogan, J.) (citing and applying *Wolinsky* factors). The parties submit that their settlements of Plaintiffs' FLSA claims are fair and reasonable based on an analysis of the *Wolinsky* factors.

### a. Range of Possible Recovery

Based on the Plaintiffs' collective records and recollection as to their hours worked, and applying the maximum three-year FLSA limitations period, see 29 U.S.C. § 255(a), their maximum FLSA compensatory damages together total $608,485, which amount can be doubled for liquidated

damages to $1,216,970.[3] **Exhibit C.**  Defendants continue to maintain that they are not employers, and that Plaintiffs worked for one or more subcontractors who exclusively controlled their pay, their work, and all of the terms and conditions of their employment.  Defendants further maintain that at all times they acted in good faith, and therefore do not owe Plaintiffs any wages.

Thus, taking Plaintiffs' allegations and recollections as true, the range of recovery for their FLSA claims is between $1,216,970 and zero.  As such, the net settlement amount represents 35.4% of the unpaid wages actually claimed to be owed, and 17.7% of those wages plus liquidated damages, which is Plaintiff's best day recovery. The outcome here is therefore highly reasonable. *See Gervacio v. ARJ Laundry Servs. Inc.*, 2019 WL 330631, at *1 (S.D.N.Y. Jan. 25, 2019)(finding twenty percent of maximum recovery reasonable in light of circumstances); *Villanueva v. 179 Third Avenue Rest Inc.*, 2018 WL 4100479, at *2 (S.D.N.Y. Aug. 28, 2018) (finding "less than six percent of estimated maximum recovery" to be reasonable in light of the circumstances).

### b.  *Avoiding Burdens and Potential Risks of Litigation*

Regarding the second and third *Wolinsky* factors, if the parties failed to reach a settlement, the case would have been stayed during the pendency of the related criminal charges.  Therefore, no sooner than perhaps years from now, the case could resume with written discovery, depositions of the parties, and thereafter competing motions for summary judgment. Thereafter, the parties would proceed to a trial on the merits of all of Plaintiffs' claims, a task that would have been daunting for both sides, as memories fade and witnesses move.  At bottom, even if successful at the summary judgment and trial stages, Plaintiffs faced a difficult challenge in recovering a greater judgment than the Settlement Sum. That is because Plaintiffs understand that if they were to continue with the litigation - - even if successful - - they may never receive more money than what Defendant is now offering, or even any money at all.  Indeed, courts have recognized that discovery, continued litigation, and eventual trial practice may "meaningfully decrease possible recovery for Plaintiff[s]." *Flores v. Mama Lombardi's of Holbrook, Inc.*, 2015 WL 2374515, at *5 (E.D.N.Y. May 18, 2015).  With litigation risks and expenses only expected to substantially rise for all parties in this matter, and likelihood of recovery greater now than ever hence, the Settlement Sum is fair and reasonable.

### c.  *Arm's-Length Bargaining, No Fraud or Collusion, No Cheeks Admonishments*

As to whether the settlements are the product of arm's-length bargaining and are a reasonable, non-collusive resolution of the case, the settlement negotiations were protracted and concluded after many negotiations between counsel, being finalized at an all-day mediation, for which many of the Plaintiffs were present, and only after Defendant moved to stay the case. There was no

---

[3] A chart with the individual breakdowns for each plaintiff is attached.  However, because Plaintiffs will be receiving their proportionate share of the net settlement, the percentages of recovery will not change.

fraud or collusion here. *E.g. Romero v. La Revise Assocs., L.L.C.*, 58 F. Supp. 3d 411, 420 (S.D.N.Y. 2014) ("Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement").

Furthermore, the Agreement does not contain any terms that would militate against the Court approving them. For instance, Plaintiffs have not agreed to a general release of all claims, but rather, only a release of all wage claims under the FLSA and NYLL. Likewise, the Agreement does not contain a confidentiality clause or non-disparagement clause that may "run afoul of the purposes of the FLSA and the public's independent interest in assuring that employees' wages are fair." *Flood v. Carlson Restaurants Inc.*, 2015 WL 4111668, at *1 (S.D.N.Y. July 6, 2015) citing *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 177-78 (S.D.N.Y. Mar. 30, 2015); c.f. *Ezpino v. CDL Underground Specialists, Inc.*, 2017 WL 3037483, at *2-3 (E.D.N.Y. June 30, 2017)(approving settlement agreement where it did not contain a confidentiality provision); *with Gonzalez v. Lovin Oven Catering of Suffolk, Inc.,* 2015 WL 6550560, at *3 (E.D.N.Y. Oct. 28, 2015) (citing *Cheeks*, 796 F.3d at 206 and declining to approve FLSA settlement containing a confidentiality provision).

### III.    The Requested Attorneys' Fees are Reasonable

In addition to assessing the reasonableness of the settlement amount, most courts since *Cheeks* have found that courts "must also assess the reasonableness of any attorneys' fee award." *Velasquez v. SAFI-G, Inc.*, 137 F. Supp. 3d 582, 585 (S.D.N.Y. Oct. 7, 2015). When courts examine attorneys' fee awards in Rule 41 FLSA settlements, it is "to ensure that the interest of Plaintiff's counsel in counsel's own compensation [did not] adversely affect the extent of the relief counsel [procured] for the clients." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013).

Here, the portion of the Settlement Sum attributable to attorneys' fees is $108,075.90, limited to 33.33% of the net Settlement Sum *after* reducing counsel's litigation expenses. While the Second Circuit has recently emphasized that in most "run of the mill" FLSA cases, "it does not make sense to limit fees to 33% of the total settlement," *Fisher*, 948 F.3d at 603-604, courts in this Circuit nevertheless routinely approve attorneys' fee awards at a rate of one-third of the total gross settlement, which is less than Plaintiffs' counsel seeks here. *See Fresno County Employees' Retirement Assoc. v. Isaacson/Weaver Family Trust*, 925 F.3d 63, 71 (2d Cir. 2019) ("[W]e have previously noted that the percentage method has the advantage of aligning the interests of plaintiffs and their attorneys more fully"); see also *Cregg v. Firstservice Residential N.Y., Inc.,* Case No. 15-cv-3876-LB, Dkt. No. 14 at *4-5 (E.D.N.Y. Dec. 9, 2015)(approving one-third attorneys' fees award as "the norm in this Circuit"); *Calle v. Elite Specialty Coatings Plus, Inc.*, 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014) ("A one-third contingency fee is a commonly accepted fee in this Circuit."); *Thornhill v. CVS Pharmacy, Inc.*, 2014 WL 1100135, at *3 (S.D.N.Y. Mar. 20, 2014) (collecting cases setting attorneys' fees at one-third of the settlement).

Case 1:21-cv-06224-TAM   Document 57   Filed 09/06/22   Page 6 of 6 PageID #: 259

Page **6** of **6**

Additionally, the reasonableness of Plaintiffs' counsel's requested fee is further solidified by "[a]pplying the lodestar method as a cross check." *See Fresno County Employees' Retirement Assoc.*, 925 F.3d at ("district courts should use the lodestar as a 'baseline' against which to cross-check a percentage fee"). In order to calculate the lodestar check, counsel multiplied the attorney and paralegal hours spent on the case by each individual's reasonable hourly rate. *See Healey v. Leavitt*, 485 F.3d 63, 71 (2d Cir. 2007). As of September 6, 2022, counsel has billed 435.2 hours in total on this matter - - an adversarial litigated case as detailed herein - - amounting to $124,595.00 in fees, an amount well in excess of counsel's attorneys' fees requested herein. This figure is based on hourly rates of: $350.00 per hour for Glendoval Stephens, Esq., Plaintiffs' counsel's firm's managing attorney; $100.00 for the firm's paralegal; and $75.00 for the firm's legal/administrative assistant. Courts routinely approve these rates in similar cases. See, e.g., *Feuer et al. v. Cornerstone Hotels Corp. and Naeem Butt,* 2:14-cv-05388-JFB-SIL, Dkt. No. 121, Order (E.D.N.Y. Oct. 20, 2021); *Caltenco v. G.H. Food Inc., d/b/a Natural Garden, and Gurdip Singh*, 1:16-cv-01705-VMS, Dkt. No. 112, Memorandum and Order (E.D.N.Y. Sept. 30, 2021). Plaintiffs' counsel's contemporaneous billing records are attached hereto as **Exhibit D**.

Additionally, Plaintiffs' counsel seeks reimbursement for out-of-pocket litigation expenses in the amount of $772.30, comprised of the initial filing fee, printing and copying costs, postage, and research fees. Plaintiffs' counsel's expenses are detailed in the attached billing records. Accordingly, Plaintiffs' counsel's request for a total of $108,848.20 is entirely reasonable.

## Conclusion

For the foregoing reasons, Plaintiffs respectfully request that the Court: lift the stay of Hines's claims; dismiss all claims in this matter with prejudice; and retain jurisdiction to enforce the terms of the parties' Agreements should that become necessary. A proposed order of dismissal is attached hereto as **Exhibit E**.

We thank the Court for its time and attention to this matter.

    Respectfully submitted,

    /S/

    Glendoval Stephens

C:   All parties via ECF